Good morning, Your Honors. Keith Peck on behalf of the Pellants. Your Honor, first I'd like to take a look at the least restrictive environment issue. If the Court's ruling stands as it is, there is no requirement for least restrictive environment in the State of Hawaii. I want to address the motion to dismiss from witness. Would you like me to? Yes. Well, it's sort of a threshold question. In Keith's mood, there's no point in talking about anything, right? Sure. Thank you very much. We have remedies. I believe that the premise of the motion is that there are no available remedies because we received state put. Is your client still in the State of Hawaii? State of Hawaii? No, and I don't believe that compensatory education is not in the State of Hawaii Court's education system at all. That's correct. Okay. I believe that the compensatory education is not – he doesn't require – the child doesn't have to be here to get compensatory education. If it goes back to the hearings officer who determines whether a compensatory education is appropriate, he could have funding for services privately engaged, and the Department of Education could order to pay that. Is the child still in Hawaii? No, the child is not. Are the parents in Hawaii? No, my client does have a law practice in the State of Hawaii, however. Okay. So where is the child? In the State of Massachusetts. And if we were to agree with the contentions in your brief, who would we – including the restorative relief – who would we direct that to? It would go back down to the district court who would send it down to the administrative law judge. And the ALJ would direct the educational officials in the Commonwealth of Massachusetts to carry out the program? No, Your Honor, that wouldn't be appropriate in my understanding. The ALJ would say that – Or possible. Or possible. I said not parties. Sure. Now, what would happen was if they agreed that my clients should be given compensatory educational services, then they could order the Department of Education to pay for private services that are obtained by my client. They could also reimburse my client for transportation, which hasn't been done. They could order recompense for the educational evaluations and the educational experts that determine where this child should be put. These things are outgrowths of the denial of faith, I argue. So this would be up to the hearing officer, the administrative law judge, to determine whether any remedy is available, whether what remedy is appropriate. But it is necessary for the administrative hearing officer to do that fact-finding and determination. Okay, so that's your answer to the mootness. It is indeed. Okay, go ahead. With regard to the least restrictive environment issue, if you allow the court – if you allow the state of Hawaii to say that as deemed appropriate is an answer to the placement for a child, then as deemed appropriate could be always used. We'll provide the child – and it is often, actually, in the state of Hawaii. The child will be in special education for math, English, and science and will be with the general education classroom as deemed appropriate. But there are no constraints on the term as deemed appropriate. It's like saying when we decide under the conditions we determine are appropriate, that's when we're going to allow the child to access his general education peers. And the Individuals with Disabilities Education Act is not an education statute. It's an anti-discrimination statute. It's a statute meant to avoid removing a child when it could be – when the child could be with his peers, with the supports he needs. And one further statement, Your Honor, it's because it's not a determination of what is best educationally for the child. Should he be in special education? Should he be in regular education? It's not about what's the best place for him to get an education. It's where he can be – it's the idea of not excluding him if you can perform – if he can get some benefit. First time I met a child with Down syndrome was in sixth grade. She came in – I don't know where she was going to school before because I had never seen her at that school. All of a sudden, she's in my class. No, she's not getting a lot educationally from that, but she's not isolated. She's not ostracized. Disabled people are people, and they should be educated with their peers if possible. Let me just go back. So there was an IEP proposed, right, and included this provision, and your client objected to it? My client objected to it, but I think that's immaterial. Under Doug's case that I recently did, it's not the parent. You may think my question is immaterial, but that's not what I asked. Well, I'm going to answer it, and I have. You're going to – huh? My client did object to it. My client vehemently objected to it. We have it in the record. I'm sorry. Is yes an unacceptable answer for a lawyer? I think that I – Do you think that if you pound the table, it's going to make it any more yes? Yes, I do. I do think that that would – that's why I did it, because I was emphatically saying yes. You don't think I'll believe you? If you're not emphatic about it, you think I'm going to say, oh, well, he's lying? Well, I was – because you asked the question, I was wondering why you asked the question. It's in our brief. It's in the record. It's in the testimony. So your client objected, okay, objected to other things, right, and then the school district went to due process on this, right? Is that what the next step was? Yes, my client objected to the provision of the least restrictive environment and other issues. Why did it now go to due process at that stage? I'm sorry, sir? Was the next stage due process? Yes. Did your client propose a different language for that, a different constraint along the way? Did he say, look, this is unacceptable because it doesn't specify, you know, it's not specific. Did he come up with alternative? At the stage of the due process? Well, at any point. I'm just saying. I was trying to figure out, was it a negotiation? Was it something along the way? Did the school district reject language that he proposed? He said that that language, as a – they propose language, and then the parents can say, look, this language is not okay. Revise the language. Here's, you know, we want something else. Did that happen? Yes. It's in the record. It's in the record. What language did he propose? He proposed that we have a discussion as to when the child will actually be pulled out, and the Department of Education, he said that just leaving the language as deemed appropriate. Remember, this is the fourth time in a row that the parent has objected to this kind of language. And the fourth – I'm just trying to figure out. You say this language is not appropriate. I'm just wondering if your client suggested some other language. He suggested a conversation on that language. That's what an IEP is supposed to have, a conversation with the parent on when this is appropriate. You're supposed to determine, okay, well, Jimmy can do this, and Jimmy gets upset when this happens, so let's figure out how to write that in there. Jimmy will go to social studies and science when there's hands-on projects. That's how an IEP is a conversation. It should be. And if the parent is unhappy with what the proposed language is of the school, the parent then comes up with alternatives, says, well, this is not okay. Here's what I propose is okay. And I'm just wondering what it is that your client put on the table as the alternative that would be acceptable. Your Honor, if you want to know if he said, well, I think we should construct it this way, that didn't happen. You know why? Because the conversation wasn't provided. It wasn't – it didn't happen. The DOE cut off the conversation. He said that was inappropriate to do this. He said we need to figure this out ourselves, and they cut off the conversation. A parent is not the one who's being protected by this law under DUGC. It's the child. And even if the parent couldn't say anything, even if the parent agreed, it's still a violation because that's a – it's required under the statute. So in this case, the parent couldn't have that conversation because the DOE cut it off. That's a procedural violation. And the DOE didn't include it. That's a substantive violation. I'm not understanding what you mean, cut it off. Was there something that prevented him from sending in or bringing a piece of paper or just while there at the IEP saying, here is what I find acceptable, here is what I substitute? The parent doesn't have the responsibility to come up with this on their own. They wanted a discussion. But you're not answering my question. I'm not asking whether he needed to. I'm just asking, is there anything that prevents him from doing that? Yes. Absolutely there's something that prevented him from doing that. Like what? He can't hold a discussion about this issue by himself. He sought a discussion on this issue with the team. He was – they would not have a discussion on this issue. Look in the record. This is what they decided. They wouldn't talk about it. He asked to talk about it multiple times during the IEP. So he couldn't have said, here is what I find acceptable or put in a piece of paper saying this? Sure, if he had an idea without a discussion with the whole IEP team, if he just wanted to come up with some idea on his own and present it, he could have thrown something out. But that's what's developed during the IEP meeting. It's developed by a discussion. So, yeah, if you want to voice that responsibility on him, that he had to come up with some alternative language, then that's fine. Except the law doesn't approve of that. And what is it that doesn't? What are you citing for that proposition? What am I citing? The IEP team discuss, along with the parent, the least restrictive environment. That's part of the law. It's in our brief. It doesn't require the parent to come up with their own IEP and offer it in substitution. And when he went to due process, he didn't offer an alternative either, right? When he went to due process, due process is a hearing. He said what happened. There's no opportunity to offer an alternative. But what is interesting is the Department of Education could have, at any time, changed the language and made the offer more specific. I thought there was mandatory mediation as part of the IEP process. It certainly is in California. It's not mandatory to go to mediation, Your Honor. The ALJs here don't insist on mediation? The ALJ is a hearings officer. He doesn't participate in mediation. It is not a required element of the law. Resolution sessions are a required element of the law. And the DOE could have proposed to change the language at any time, since they have the obligation to comport with the law, not the parent. I guess I meant resolution. I mean, would the parties get together and try to work it out? Mediation involves a third party. I guess I asked the wrong question. So there was a resolution session? There was a resolution session, Your Honor. And the Department of Education has the responsibility to follow the law. They could have, at any time, added new parameters to this statement of least restrictive environment. But they did not. Okay. I think you're out of time. I think I am. Thank you. Good morning, Your Honors. My name is Gary Sugunuma, and I'm the Deputy Attorney General representing the defendants and appellees in this case. With regard to the issue of mootness, I'm going to refer to the appellants as the plaintiffs and to my client as the DOE. They don't have – okay, let me – in terms of having a remedy for compensatory education, we don't think that they have a viable remedy for that. Their claim for compensatory education, their claim arises from the lack of services. They have a claim for compensatory education, right? They have a prayer for that relief, correct. Okay. So you may think that they're going to lose on that, but so long as there is – and if compensatory education were offered,  like the State of Hawaii would have to fund a certain amount of compensatory education that would then be carried out in Massachusetts or wherever the student is, right? I think it's appropriate to, in a motion – in analyzing an issue of mootness, I think it is appropriate to look at – You're not going to answer my question. You're going to talk about something else. I'm sorry. The question is, does this law and the umbrella of the law permit compensation adjustment in a case just like this, where the child went through the process in Hawaii but now is in another state in the United States? I can't say I know for sure. I don't know that I've ever looked at that issue, except – Well, you have the burden to show mootness. Your opposing counselor said, look, here's the way we can get relief. We can get compensatory education. We can ask the State of Hawaii to fund compensatory education, which will be administered wherever the child is. And your answer is, I don't know that that is – I don't have any reason to argue that that's impossible. So why doesn't that sort of defeat your mootness argument, unless you can come up with an answer that says, no, that's impossible, which I don't know. I guess the way I'm looking at it is, I don't think it's as simple as putting a prayer for compensatory education in a complaint that would shield your case from the doctrine of mootness forever. I think when you're looking at whether or not the case is moot, I think you really do need to look at the validity of the claims. Or else it would be real simple. Every complaint would just have comp-ed in it, and the case would never become moot. And I don't think that's what the law is. And so in this case, they don't have a – Why some cases just don't become moot? I mean, it could become moot if, let's say, the child dies, God forbid, or something like that. So it's not like it's impossible that the case become moot. But you don't have an answer to that. You don't have an answer to Counsel's argument. I have. You really don't have an answer. In terms of whether or not that's possible. Yeah. I can't say for sure. You better go on to the merits then. But may I just alert the court to one of the cases that I did cite? It's from the Seventh Circuit Court of Appeals. It's Brown v. Bartholomew Consolidated School Corporation. And in that particular case, it's kind of similar to this case where a student had moved out of the school district. In that case, the court used that as a factor in determining the case was moot. Does that involve compensatory education? Yes. Well, not a claim for compensatory education. The claim for compensatory education under the Brown case was determined to have been abandoned and waived, which is the same argument we can make here because the complaint filed with the United States District Court in this case doesn't have a prayer for compensatory education. And so just like the case in Brown, I think there is an argument that that claim has been abandoned and waived. How about transportation services? Transportation services were never requested in this case. I think conceivably if the student needed transportation to get to his private placement under state put, the DOE was ready to provide it. The DOE provided for transportation, bus transportation in the IEP, is something that the parent never availed themselves of, nor did they put any evidence in the record during the due process hearing that they were out of pocket for transportation costs or anything like that. And so we would submit that that claim is abandoned or waived. And as far as the other elements of the other remedies that they want in terms of parent training, and I believe it was parent training and evaluations, we submitted a declaration from a district-level person from the DOE in our reply brief saying that parent training was actually being provided by the private placement, and that has been already paid. And in terms of evaluations, there was only one evaluation from 2010 that the private placement billed the DOE for, and the DOE paid it. The remedies that they're talking about, transportation, parent training, and evaluations, are related services only for that one year period, the 2012-13 school year. That's what we're talking about. And again, transportation never requested, parent training and evaluations paid. So they don't have any further remedy there. What's your best authority for the proposition that when a child moves from State A to State B, that whatever happened in the IEP due process reconciliation procedures below is completely moot and cannot be revisited? I think because at that point, the parties don't have a legally cognizable interest in the case anymore, because whatever the court rules in terms of whether or not the IEP was deficient, whether or not the DOE committed any violations, if that situation is not going to repeat itself because the student now is in a different state, then how is it going to give the parties any guidance going forward in terms of what's an appropriate program and placement for this particular student? Well, let's say that instead of moving to Massachusetts, he moved to Maui. It wouldn't make a difference. Still be moot? No, absolutely not. Because assuming he had a viable claim for, say, compensatory education, it wouldn't because Hawaii is one school district, so all the islands were all in one school district anyway. So that's a different situation. Okay. Now let me move on to the merits of the case. The as-deemed-appropriate language, I think, counsel had objected to it saying that it could lead to the exclusion of this student. It could lead to this student being isolated. But that's not true because this language – Well, I think his objection is it was not sufficiently specific to guide the teachers as to what they're supposed to do or to test whether or not the IEP has been complied with. There's something to that argument. It's just not sufficiently specific. There's a full discussion on the language at the IEP meeting. The father agreed to this language. The father agreed, and this is where it's at. The May 7th IEP meeting, this is of 2012, and this is cited in the answering brief. So when opposing counsel, I asked opposing counsel that question, and he vehemently said, no, no, no, no, no. He was lying? I wouldn't say he's lying, but we don't agree. Go ahead and call it whatever you want. What do you want to call it? Forgot? He was mistaken? Yeah, they're taking a totally un- He was very vehement about it, and I just asked him a simple question, and he just went off the deep end about it. Is he just wrong about that? I mean, the two of you, if you go outside and discuss this and come back, will one of you have to say, gee, I was wrong? Would he have to say, gee, I was wrong? What's the story with that? Yeah, but I'm honestly disparaging about Mr. Peck. But what I can tell you is- No, you don't have to be. I mean, just talk about the facts. So I asked the question, did the parent object? And he was quite clear, vehement. The parent objected insofar as the parent thought. The parent's a lawyer. The parent thought that by using this language and giving discretion- We'll forgive him that. By giving discretion to the parents, that it was an improper delegation of authority to lessen the whole IEP team to make decisions as to when students could participate in a setting. I just asked a simple question, and neither of you wants to give me a straight answer. I asked, did the parent object? He said, no, no, no, no, no, no, no. And you are saying what? The parent did object, but not ultimately to the language that we're talking about. Okay, explain. So the parent objected insofar as he's saying it's a delegation to lessen the whole IEP team if two teachers make a decision on a daily basis as to when a student can go to Gen Ed setting for science and social studies. And so during the conversation, he voiced that to the team, and he said,  Did he sign the IEP? No, I don't think that's required. Signing of the IEP? I think signing the IEP, those consent, says, you know, the IEP has been provided. He rejected the IEP. I don't think that's disputed. He did reject the IEP. He rejected the IEP. Well, he filed for due process soon after the IEP was- So in what sense can you say he consented to the language if he rejected the IEP? He didn't sign off on it. He didn't sign it. He didn't approve it. Ultimately, the audio recording on May 7th had them discussing the language, and then what happens is the dad is asked, Okay, so is it your understanding that IDA is all or nothing? So a student either has to be placed in the Gen Ed setting or in the special ed setting. There cannot be anything, any gray area, no mix or, you know. And he said, Well, that doesn't make sense. I agree with you guys. I don't think it should be all or nothing. But nonetheless, he still believed the IDA still, you know, wouldn't allow teachers to make a decision on a daily basis in terms of inclusion. So what happens is he says, then he says, I want the special education and general education teachers to talk because those two teachers would be collaborating and coordinating when students should be placed in the Gen Ed setting for those two classes. And then he says, I hear you on the workaround. That's what he says to the team. And when you listen to it, I mean, it's pretty obvious. He's saying it in such a way that he's assenting to the language. And then they move on from there. I'm not sure. We're going to sit here and listen to nuances of tape recordings. I mean, the way consent is given to an IEP is pretty simple. You know, there's a signature line at the bottom where the parent says, Okay, I approve. If you don't have a signature, then the parent doesn't approve. Along the way, parents say all sorts of things. Administrators say all sorts of things. And we're not trying as a fact. We're going to sit there and listen to. Ultimately, the question is, did they sign off on it? If they did, they're bound to some extent in your own institution. I assume that when they go to due process, it means he's not approving it. He has not signed off on it. I mean, occasionally you see parents signing off on it and going to due process anyway. And then they've got a waiver issue to deal with. But in this case, there was no signature. There was no signature. But there was also, as the court had asked opposing counsel, the father did have an opportunity to say, Hey, look, I think there's a problem with this language. Can we change it to this? Or can we have another IEP meeting? He could have done that at the resolution session. Nothing like that was done. Can I ask a question that goes to the merits? One of the contentions in the brief is that the IEP failed to specify a location for extended school year services, in particular contact with non-disabled persons. And the brief argues that's a substantive statutory violation. What's your response? In this particular case, what – Do you concede the need for students on the autism spectrum to have contact with non-disabled persons? This particular student, yes. The placement for this student, the general placement under the IEP, was in an inclusion setting. There's no question. Now, the issue now is during summer ESY. What is the setting going to be in summer ESY? What the team determined was that the father's concern – I thought there was no determination. I thought the school principal stood up and said, here's where it will be, period. No, absolutely not. There's a transition meeting after the IEP was developed on June 13, 2002. There was a full discussion on the harmful effects of the change in setting from the private center to the public school. And that's in the record. There's also a draft transition plan that actually – it's in the record as Respondents Exhibit 3. The excess of records submitted by the plaintiffs only included two pages of the draft transition plan, which is a schedule for its transition. And they argue that the harmful effects were not discussed. But then the first three pages of the draft transition plan is actually entitled consideration of students' possible needs to minimize potential harmful effects in the transfer from a private school to a DOE public campus. And it goes through all of the considerations that the team considered at that time. The dad fully participated in that meeting. Can you address the claim that there was – that the IEP fails to identify a specific methodology, particularly a failure to designate an ABA plan? The team discussed methodology. The dad was not denied a discussion on methodology, but the team's position was – Well, you can talk about it all you want, but unless it's nailed down in the IEP, there's no rights. You don't dispute that, in fact, no methodology is specified? Yeah, well, yeah, I don't dispute that. Maybe what's the response? Yeah, there's no methodology. I'm sorry. I asked the question backwardly, so I may have confused counsel. You agree – let me just put it positively. You agree that the IEP does not contain a methodology? The IEP does not mention any methodology. The PWN, on the other hand, for the IEP – What's the PWN? The prior written notice that is issued along with the IEP, which, as I understand, is to offer FAPE. It does mention possible methodologies that the school will be using, such as ABA methodology, discrete trial training, and I think – I'm not sure. It might have been something else. What is this thing? The prior written notice. It accompanies the IEP, and it basically tells the parent that – attaches the IEP – this is our former law of FAPE, and it usually tells you where the location of the IEP is going to be implemented. What's its effect? If it's not in the IEP, is it binding? Yeah, I think that – Is it enforceable? I believe the PWN is technically – Your personal belief is of no consequence to me. I'm asking a legal question. As a matter of law, if the parent signs off on the IEP, and then the school fails to comply with this PWN, or whatever they call it, does the parent have rights to say, well, you didn't follow that? I believe so, yeah. The parents can – Again, you're using the word believe. I mean – I thought if it's in the IEP, it's sort of a contract. If it's in the IEP, it's binding. If it's not in the IEP, it's not binding. Am I wrong about it? This sounds to me sort of like parole evidence, like in Pacific Gas and Electric. Remember that from law school, Pacific Gas and Electric, Judge Strainer's opinion, where you bring in all this – one thing, and then you bring in all this parole evidence, saying, oh, no, no, that stuff in the contract doesn't mean anything. I mean, I don't know. I've never heard of this thing where you've got stuff outside the IEP that's binding. Do you have any authority for that? Parents can challenge what's in the PWN. They can file for due process on that as well. But the whole thing is that – we cited the case law saying that it's up to the schools to determine methodology, not unless the team determined that a specific methodology for this student is necessary for the student to learn. I understand. That's the school's position, and the parent is now claiming, look, this is an autistic child. We have to have a specific methodology that deals with autism, and specifically say ABA is the accepted method to deal with autistic children. We want that methodology specified. What's the school's district's answer to that? On May 7th, at the May 7th meeting, the school explained to the dad, we cannot commit to just ABA methodology, because if we want to have students included in a gen ed setting, then ABA methodology is not going to be used in that setting. And so they needed to have the flexibility of having, you know, an array of different methodologies that they would try to use. Obviously over time, because this is a kindergartner that never attended public school, well, attended public school very briefly in preschool. But what the team is telling them is that we're going to try these methodologies, and, you know, if they figure out that one works better than the rest, then that's a subject for a future IEP in terms of what methodology should be used. But it was fully explained to the parent what was going to happen. Thank you. I think you're out of time. You're out of time as well, as I recall, but we'll give you a minute for rebuttal if you wish to take it. Thank you, Your Honor. Your Honors, with regard to the issue of out-of-state remedies, that, I don't believe, was in the motion, and I didn't brief it because of that, as I recollect. But I have read where it would be violative to rule that the remedy was lost because the child moved, because that would be a penalty for moving from state to state. Well, what the Head Opposing Counsel argues is that this was not raised as a remedy sought in the district court, that compensatory education was not in complaint. I haven't looked it up. What's your answer to that? I don't recall myself, but I believe that we asked for all appropriate remedies at the district level. We were appealing the underlying decision, and we raised the issue of compensatory education at the district court. I do remember that, and it's in our brief. In fact, it's in our brief that the district court failed to rule on it, so we must have raised it. Okay. Thank you. And lastly, I would say that the four corners of the IEP is what is being judged. You cannot challenge a PWN. You cannot challenge a non-IEP transition meeting schedule, which is what a transition meeting is. It develops a schedule from place A to place B. It doesn't address the impact of changes in the child's program. That's an IEP issue. They said this transition plan was so necessary, they couldn't address ESY at the time without first addressing the transition plan. What's at stake? What's left at stake in this case? The child is gone. We're talking about a few dollars of compensatory education or transportation services? What's at stake? And your attorney's fees, I gather. No, I'm not kidding. I'm not tying to Josh. I'm just wondering, what are we talking about here? If you're talking about in dollars and cents, yes, it's a very small amount of dollars and cents. It may be. Why don't you guys go outside and settle this case? I mean, you know, this is no longer a situation where you've got a child that's continuing in the system that sort of needs specific continuing relief. You're just talking about a few bucks, right? Well, that may be what the court sees as, you know, a remedy available. That's not how I see this case. I see this case as allowing the Department of Education to deny conversations about. It's a matter of huge principle? Is that what you're talking about? It's about principles, Your Honor. That's what it is for me. That's why I'm in this area of the law instead of the one my brother does. I'm not going to ask what your brother does. You don't think this case could be settled? I mean, it just seems like eminently the kind of thing that the parties. You both seem like reasonable lawyers. I have five. More or less. I have five cases before this court, one from Arizona, four from Hawaii. I could bring 100 of them because the Department of Education, as determined with the rulings that the district court provides them. I really wasn't asking for a speech. I was really, so we have no answer. Do you think this case would profit from mediation? I have asked about that, Your Honor, and I spoke to my opposing counsel about that. And the terms upon which they would settle this case, especially with regard to attorney's fees, were quite minimal. Okay. So you don't think it would be productive to try to have this case settled? If you give an indication to the Department of Education that they'd be wise to settle it, I think that maybe there would be some productivity. We always think it is wise to settle. Would you like to defer submission of this case for a couple of days for you guys to talk about it? We have a very fine mediation office that does marvelous work. I would never, at the behest of the court, I would never disagree. How about you, Mr. Sugunuma? Yes. Did I get that close to right? Thank you. Mr. Sugunuma, do you think it would be worthwhile? You're both reasonable lawyers. You're here. We have a very fine mediation office that does very fine work. Would you all be amenable to submitting it to mediation? Do you want to think about it? Why don't we defer submission for 48 hours in this case? And if the parties file something saying mediation is impossible, we will go ahead and decide the case. If not, we will refer you to mediation. I can always count on my colleagues to approve mediation because it's always a good thing. I think aside from, I mean, we've already spent much time on this case already, so it's not like we're saving much time, but there's much to be gained by having the parties buy into a solution of their own rather than having the court impose it. So we'll wait 48 hours. And if we don't hear an objection, we will go ahead and contact the mediation office. Thank you very much. All right. Thank you. Submission is deferred. This is the last case to be argued. We are adjourned.
judges: Kozinski, Hawkins, Bea